UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN FRANCISCO SANDOVAL-LINARES,<br><br>Petitioner,<br><br>v.<br><br>MATTHEW T. ALBENCER, Field Director, Immigration and Customs Enforcement, et al.,<br><br>Respondents. | Case No. 2:20-cv-00928-JVS-KES<br><br>FINAL REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

This Final Report and Recommendation ("R&R") is submitted to the Honorable James V. Selna, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.[1]

---

[1] This Final R&R is issued to correct minor scrivener's errors in the initial R&R. Because the findings and recommendation remain unchanged, the parties are not granted a second opportunity to file objections.

# I.
# INTRODUCTION

On January 29, 2020, Juan Francisco Sandoval-Linares ("Petitioner"), a native and citizen of El Salvador, filed a counseled petition for writ of habeas corpus ("Petition" at Dkt. 1) under 28 U.S.C. § 2241. Petitioner argued that his due process rights were violated because he was not been given a meaningful opportunity to apply for asylum.

The Petition sought an emergency order preventing Petitioner's removal to El Salvador. (Pet. at 2.) On January 31, 2020, the District Judge denied Petitioner's request for emergency relief, finding, "Petitioner offers no evidentiary basis for emergency equitable relief. Without such support, the Court cannot say that he is likely to prevail o[n] the merits." (Dkt. 4.) The Magistrate Judge then directed Respondents to file a response to the Petition. (Dkt. 5.)

On February 3, 2020, while awaiting the response, Petitioner filed additional evidence in support of the Petition. (Dkt. 6.)

On February 14, 2020, Respondents moved to dismiss the Petition ("Motion" at Dkt. 8). Respondents asserted that Petitioner was deported on February 5, 2020 and that this mooted the Petition. (Id. at 6; see also Mot. Ex. A / Dkt. 8-1 [warrant of deportation/removal].) They also argued that this Court lacks subject matter jurisdiction because: (a) the Petition should have been filed in New York and/or New Jersey, and (b) provisions of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA") in 8 U.S.C. § 1252 deprive federal district courts of jurisdiction over the types of claims raised in the Petition. (Mot. at 7-8.)

Petitioner filed an opposition to the motion, which attached additional evidence. ("Opposition" at Dkt. 10.) Respondents then filed a reply. ("Reply" at Dkt. 12.) At the Court's request, Petitioner filed a sur-reply ("Pet'r Sur-Reply" at Dkt. 14), and both parties filed supplemental briefing addressing the effect of a Supreme Court decision issued after briefing was completed, Department of

Homeland Security v. Thuraissigiam, -- U.S. --, 140 S. Ct. 1959 (2020). ("Resp't Suppl. Br." at Dkt. 17 and "Pet'r Suppl Br." at Dkt. 19.)

The Motion is now ripe for review. The Court should grant Respondents' Motion and dismiss the Petition for lack of subject matter jurisdiction. The claims raised in the Petition, which challenge the validity of an expedited removal order entered against Petitioner, are barred by 8 U.S.C. § 1252 and the Supreme Court's recent decision in Thuraissigiam.

## II.
## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to raise lack of subject matter jurisdiction in a motion to dismiss. Because mootness pertains to a federal court's subject matter jurisdiction under Article III, it is properly raised in a motion to dismiss under this rule. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." Id. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Id.; see also White, 227 F.3d at 1242.

## III.
## FACTUAL BACKGROUND

The parties do not dispute the facts material to resolving Respondent's Motion to Dismiss, which the Court takes from the Petition and the documents submitted by the parties.[2]

---

[2] Although the parties do dispute whether Petitioner was a resident of New York or California when he was detained by immigration officials, this fact is not

3

Petitioner is a native and citizen of El Salvador.  He entered the United States with his mother in 2012, when he was 14 years old.  (Pet. at 4 ¶ 11; id. at 8.)  They "fled from El Salvador because she was receiving threats from the Maras,"[3] who demanded that Petitioner's family pay monthly protection money that they could not afford.  (Dkt. 6-1 at 6 [asylum application]; see also Dkt. 6-3 ¶ 8 [sister's declaration].)

Petitioner "never had an opportunity to be interviewed for his request of asylum[;] at the time of his arrival immigration officers interviewed his mother due to him being a minor."  (Pet. at 4 ¶ 11; see also Dkt. 6-1 at 9 [asylum application alleging, "When I arrived [in] this country I was a minor, and did not have an opportunity to express my fears."].)  "No translator was provided to Petitioner at the time of the interview" with his mother.  (Pet. at 4 ¶ 12.)  He "did not understand the proceedings because they were conducted entirely in English" and he "spoke no English...."  (Id. at 4 ¶ 12; id. at 7.)  The Petition does not state whether Petitioner's mother spoke English.

An expedited removal order was entered against Petitioner and his mother. (See id. at 4 ¶ 10 [noting that Petitioner had filed a "Motion to Reopen his Expedited Removal Order which was entered when Petitioner was a minor"]; id. at 5 ¶ 14 [challenging "the procedural deficiencies in the underlying method used to obtain the expedited removal"].)  In September 2012, Petitioner and his mother were released from custody under an order of supervision and instructed to report back to immigration authorities.  (Opp'n Ex. A / Dkt. 10-1 at 2.)

In January 2020, Petitioner was detained by immigration authorities at the

---

material to the issues resolved in this R&R.

[3] The "Maras" are criminal gangs in El Salvador.  See Garcia-Leiva v. Holder, 397 F. App'x 358, 359 (9th Cir. 2010) (discussing asylum claim by petitioner alleged to be one "of government witnesses against Mara gangs in El Salvador who have been violently attacked, scarred, and threatened").

4

Bergen County Jail at 160 South River Street in Hackensack, New Jersey. (Pet. at 2 ¶ 1; Dkt. 6-3 ¶ 5 [declaration from Petitioner's sister].)

On or about February 3, 2020, "[A]n application for ... asylum and withholding of removal was filed with the USCIS [United States Citizen and Immigration Services] and Immigration and Customs Enforcement" on Petitioner's behalf. (Pet'r Suppl. Br. at 7; see also Dkt. 6-1 [I-589 Application for Asylum and for Withholding of Removal]; Dkt. 6-3 ¶ 10 [declaration from Petitioner's sister].)

On or about February 5, 2020, Petitioner was removed from the United States. (Mot. Ex. A / Dkt. 8-1 [warrant of deportation/removal].)

## IV.
## CLAIMS RAISED IN THE PETITION

<u>Ground One</u>: Petitioner's "due process right to legal representation" under the Fifth Amendment's Due Process Clause was violated because he was not provided an opportunity to seek counsel at his own expense prior to the 2012 interview of his mother by immigration officials. (Pet. at 6-7 ¶ 19(1).)

<u>Ground Two</u>: Petitioner's "due process right to a fundamentally fair hearing" under the Fifth Amendment's Due Process clause was violated because, due to the lack of a translator at the 2012 interview, Petitioner could not have been properly advised of his legal rights under 8 C.F.R. § 1240.10, such as his right to pursue an asylum application, present evidence, appeal, etc. (Id. at 7-9; see also id. at 4 ¶ 12.) "[A]ny waiver of rights which may have been asserted by [Petitioner] could not have been considered either knowing or intelligent." (Id. at 8.)[4]

Based on these claims, Petitioner seeks an order: (a) granting the writ of habeas corpus; (b) enjoining Respondents from deporting him; (c) directing "that

---

[4] Petitioner notes, "Whether the ICE officer who entered the Expedited Order of Removal attempted to inform [Petitioner] of any of these rights (as required) is difficult to determine because a transcript of the proceeding was never ordered." (Pet. at 8.)

Respondents join in Petitioner's efforts to reopen the removal proceedings on the basis of [his] application for asylum"; and (d) awarding Petitioner reasonable costs and attorneys' fees. (Id. at 9.)

## V.

## DISCUSSION

### A. Respondents Have Not Shown that the Petition is Moot.

Respondents argue that the Petition should be dismissed because Petitioner's removal from the United States moots the Petition. (Mot. at 6.) Removal *after* a federal habeas petition is filed "does not render the habeas petition moot where there are collateral consequences arising from the deportation that create concrete legal disadvantages." Zegarra-Gomez v. I.N.S., 314 F.3d 1124, 1125 (9th Cir. 2003); see also Handa v. Clark, 401 F.3d 1129, 1132 (9th Cir. 2005) (finding petition was not moot after removal where petitioner would be ineligible to apply for reentry for ten years).

The Petition alleges that Petitioner is subject "to a ten-year bar to re-entry" following his removal. (Pet. at 6 ¶ 18.) When the Court asked Respondents to address the effect of this allegation on the mootness analysis (Dkt. 11 at 3), Respondents did not contest the accuracy of this allegation or submit any evidence to the contrary. In fact, they admitted that the Petition "may not be mooted entirely by [Petitioner's] removal...." (Reply at 3.) Accordingly, Respondents have not met their burden of demonstrating mootness, and the Court declines to dismiss the Petition on that ground.

### B. This Court Lacks Habeas Jurisdiction Over the Claims Raised in the Petition.

#### 1. Legal Background

##### a. Statutory Framework

"The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she

should not be removed. Among other things, an alien may apply for asylum on the ground that he or she would be persecuted if returned to his or her home country." Dep't of Homeland Sec. v. Thuraissigiam, -- U.S. --, 140 S. Ct. 1959, 1964 (2020). In 1996, attempting to address backlogs in removal proceedings, Congress passed IIRIRA, which created an expedited removal procedure for certain applicants under 8 U.S.C. § 1225(b)(1). See id.; see also Natalie R. Lile & Robert J. Lynch, Preface, 11 Geo. Immigr. L.J. 265 (1997) ("IIRIRA also changes the procedures for obtaining asylum, including the creation of an expedited removal system for asylum seekers arriving in the United States without valid travel documents.").

Applicants can avoid expedited removal by claiming asylum using the following procedure:

> If an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)-(ii). The point of this screening interview is to determine whether the applicant has a "credible fear of persecution." § 1225(b)(1)(B)(v). The applicant need not show that he or she *is in fact eligible* for asylum—a "credible fear" equates to only a "significant possibility" that the alien would be eligible. Ibid. Thus, while eligibility ultimately requires a "well-founded fear of persecution on account of," among other things, "race" or "political opinion," §§ 1101(a)(42)(A), 1158(b)(1)(A), all that an alien must show to avoid expedited removal is a "credible fear."
>
> If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive "full consideration" of his asylum claim in a standard removal hearing. 8 C.F.R. § 208.30(f); see 8 U.S.C. § 1225(b)(1)(B)(ii). If the asylum officer finds that the applicant does not have a credible fear, a supervisor will review the

asylum officer's determination. 8 C.F.R. § 208.30(e)(8). If the supervisor agrees with it, the applicant may appeal to an immigration judge, who can take further evidence and "shall make a de novo determination." §§ 1003.42(c), (d)(1); see 8 U.S.C. § 1225(b)(1)(B)(iii)(III).

An alien subject to expedited removal thus has an opportunity at three levels to obtain an asylum hearing, and the applicant will obtain one unless the asylum officer, a supervisor, and an immigration judge all find that the applicant has not asserted a credible fear.

Thuraissigiam, 140 S. Ct. at 1965-66 (footnotes omitted).

"A major objective of IIRIRA was to 'protec[t] the Executive's discretion' from undue interference by the courts; indeed, 'that can fairly be said to be the theme of the legislation.'" Id. at 1966 (quoting Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 486 (1999)). Certain IIRIRA provisions were codified in 8 U.S.C. § 1252, "which governs judicial review of removal orders," and which has been characterized as "one of the most comprehensive jurisdiction-stripping statutes in the United States Code." D.A.M. v. Barr, No. 20-CV-1321, 2020 WL 5525056 at *4, 2020 U.S. Dist. LEXIS 168306 at *13 (D.D.C. Sept. 15, 2020) (citation omitted). Section 1252(a)(2)(A) limits judicial review of orders of expedited removal issued under 8 U.S.C. § 1225(b)(1), providing in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision ... no court shall have jurisdiction to review ... *except as provided in section (e)*, any individual determination or to entertain any other cause or claim *arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title* [which concerns "inspection of aliens

arriving in the United States and certain other aliens who have not been admitted or paroled"].

8 U.S.C. § 1252(a)(2)(A)(i) (emphasis added). "In particular, courts may not review 'the determination' that an alien lacks a credible fear of persecution." Thuraissigiam, 140 S. Ct. at 1966 (citing § 1252(a)(2)(A)(iii)). "Thus, the statute makes abundantly clear that whatever jurisdiction courts have to review issues relating to expedited removal orders arises under § 1252(e)." Castro v. U.S. Dep't of Homeland Sec., 835 F.3d 422, 426-27 (3d Cir. 2016).

Section 1252(e) allows limited habeas corpus review, providing in relevant part as follows:

> (2) Habeas corpus proceedings
>
> Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but *shall be limited to determinations of--*
>
>     (A) whether the petitioner is an alien,
>
>     (B) whether the petitioner was ordered removed under such section, and
>
>     (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.
>
> . . .
>
> (5) Scope of inquiry
>
> In determining whether an alien has been ordered removed under

section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. *There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.*

8 U.S.C. § 1252(e) (emphasis added). Thus, this "provision allows habeas review of three matters: first, 'whether the petitioner is an alien'; second, 'whether the petitioner was ordered removed'; and third, whether the petitioner has already been granted entry as a lawful permanent resident, refugee, or asylee." Thuraissigiam, 140 S. Ct. at 1966. "If the petitioner has such a status, or if a removal order has not 'in fact' been 'issued' ... the court may order a removal hearing[.]" Id. (citing § 1252(e)(4)(B)).

    b.  The Thuraissigiam Decisions

Thuraissigiam entered the U.S. illegally, was detained 25 yards from the U.S.-Mexico border, and was placed in expedited removal proceedings. Thuraissigiam, 140 S. Ct. at 1967-68. After he indicated a fear of persecution in his home country of Sri Lanka, he was referred for an interview with an asylum officer, who determined that he had not established a credible fear of persecution. Id. A supervisor and an immigration judge approved that finding. Id.

Thuraissigiam filed a habeas petition arguing that he was deprived "of a meaningful right to apply for asylum" in violation of the Due Process Clause of the Fifth Amendment, because: (a) "the asylum officer failed to 'elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture' in violation of 8 C.F.R. § 208.30(d)"; (b) the asylum officer "'failed to consider relevant country conditions evidence' in violation of 8 U.S.C. § 1225(b)(1)(B)(v) and 8 C.F.R. § 208.30(e)(2)"; (c) "there were 'communication problems' between the asylum officer, Thuraissigiam, and the translator, in violation of 8 C.F.R. § 208.30(d)(1)-(2)"; and (d) Thuraissigiam "was unaware whether 'information he offered would be shared with the Sri Lankan

government.'" Thuraissigiam v. U.S. Dep't of Homeland Sec., 917 F.3d 1097, 1102 (9th Cir. 2019). He "requested 'a writ of habeas corpus, an injunction, or a writ of mandamus directing [the Department] to provide [him] a new opportunity to apply for asylum and other application forms of relief.' ... His petition made no mention of release from custody." Thuraissigiam, 140 S. Ct. at 1968.

The Ninth Circuit found that § 1252(e) did "not authorize habeas review of Thuraissigiam's petition," which "ask[ed] the district court to pass judgment on the procedures leading to his removal order." Thuraissigiam, 917 F.3d at 1104. However, the Ninth Circuit concluded that § 1252(e) "violate[d] the Suspension Clause as applied to Thuraissigiam," and it directed the district court to consider "what right or rights Thuraissigiam may vindicate via use of the writ." Id. at 1119; see also U.S. Const., Art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").

The Supreme Court reversed, holding, "[N]either the Suspension Clause nor the Due Process Clause of the Fifth Amendment requires any further review of [Thuraissigiam's] claims, and IIRIRA's limitations on habeas review are constitutional as applied." Thuraissigiam, 140 S. Ct. at 1964. Regarding the Suspension Clause, the Supreme Court held:

> [N]either respondent nor his amici have shown that the writ of habeas corpus was understood at the time of the adoption of the Constitution to permit a petitioner to claim the right to enter or remain in a country or to obtain administrative review potentially leading to that result. The writ simply provided a means of contesting the lawfulness of restraint and securing release.

Id. at 1969. Thuraissigiam, the Supreme Court found, did "not want 'simple release' but, ultimately, the opportunity to remain lawfully in the United States." Id. at 1971; see also id. at 1972 (finding historical practice "of allowing the

11

executive to justify or cure a defect in detention before requiring release" was "irrelevant" because "the legality of [Thuraissigiam's] detention is not in question"); id. at 1973-74 (distinguishing historical decisions ordering release of an alien, which may have had the "collateral consequence[]" of allowing the alien to remain in the United States due "to U.S. immigration law or the lack thereof").

Regarding the Due Process Clause, the Supreme Court found that "an alien in [Thuraissigiam's] position has only those rights regarding admission that Congress has provided by statute," because "as to 'foreigners who have never been naturalized, nor acquired any domicil[e] or residence within the United States, nor even been admitted into the country pursuant to law,' 'the decisions of the executive or administrative officers, acting within powers expressed conferred by Congress, are due process of law.'" Id. at 1982-83 (quoting Nishimura Ekiu v. United States, 142 U.S. 651, 660 (1892)). The Court concluded:

> [A]n alien in [Thuraissigiam's] position has only those rights regarding admission that Congress has provided by statute. In [Thuraissigiam's] case, Congress provided the right to a "determin[ation]" whether he had "a significant possibility" of "establish[ing] eligibility for asylum," and he was given that right. §§ 1225(b)(1)(B)(ii), (v). Because the Due Process Clause provides nothing more, it does not require review of that determination or how it was made. As applied here, therefore, § 1252(e)(2) does not violate due process.

Id. at 1983; see also id. at 1993 (Sotomayor, J., dissenting) ("Making matters worse, the Court holds that the Constitution's due process protections do not extend to noncitizens like [Thuraissigiam], who challenge the procedures used to determine whether they may seek shelter in this country or whether they may be cast to an unknown fate. The decision deprives them of any means to ensure the integrity of an expedited removal order, an order which, the Court has just held, is

not subject to any meaningful judicial oversight as to its substance.").

### 2. The Parties' Arguments

Respondents' Motion to Dismiss argued, "In the immigration context, Congress stripped district courts of jurisdiction to consider cases arising from the execution of removal orders by passing" IIRIRA, as codified in 8 U.S.C. § 1252, and "actions seeking a stay of execution of a removal order arise from the execution of a removal order, and are thus barred...." (Mot. at 7-8.) Petitioner's initial Opposition to the Motion relied on the Ninth Circuit's decision in Thuraissigiam and argued, "Although 8 U.S.C. § 1252(e)(2) does not authorize jurisdiction over the claims in the petition, the Suspension Clause, U.S. Const. art. I, 9, cl. 2, requires that [P]etitioner have a meaningful opportunity to demonstrate that he was being held pursuant to the erroneous application or interpretation of relevant law. ... Petitioner is contending ... that [immigration officials] ... have violated the Suspension Clause." (Opp'n at 4.)

Respondents' Reply admitted that "this case has some superficial similarities to Thuraissigiam" but argued, "Petitioner's main argument for habeas relief seems to be that his mother was interviewed for asylum, but he was not. ... Petitioner has not – and cannot – assert this his mother, who was interviewed by immigration officials, lacked authority to include Petitioner, as a minor child, in her request for asylum." (Reply at 2, 5 [citing 8 C.F.R. § 208.30(b)].) Respondents argued that, unlike Thuraissigiam, Petitioner did not "challenge[] the accuracy and completeness of his credible fear interview" but rather appeared to be mounting a facial challenge to immigration regulations that allow a minor's credible fear interview to be conducted in conjunction with his parent's interview. (Reply at 5.) Petitioner responded that "his expedited removal order violated statutory and regulatory requirements," and that "the failure to find he had a credible fear constituted a misunderstanding and misapplication of the statute's 'significant possibility' standard." (Pet'r Sur-Reply at 6.)

13

1    After the parties had completed initial briefing on the Motion, the Supreme
2    Court reversed the Ninth Circuit's decision in Thuraissigiam. This Court asked
3    both parties to file supplemental briefing addressing the effect of that decision.
4    (Dkt. 15.)
5    Respondents' supplemental briefing argued that the Supreme Court's
6    decision in Thuraissigiam bars relief. They argued that because Petitioner is not
7    seeking immediate release from confinement, the "relief requested falls outside the
8    scope of the writ of habeas corpus as it was understood when the Constitution was
9    adopted," and therefore outside the scope of the Suspension Clause. (Resp't Suppl.
10   Br. at 3-4 [quoting Thuraissigiam, 140 S. Ct. at 1969-70].) Additionally,
11   Respondents argued that this Court "lacks subject matter jurisdiction with respect to
12   Petitioner's due process argument because, as an alien subject to expedited
13   removal, he is limited to the rights afforded him under IIRIRA." (Id. at 4.)
14   Petitioner's supplemental briefing argued that "his expedited removal order
15   violated statutory and regulatory requirements and due process" because "the
16   failure to find that he had a credible fear constituted a misunderstanding and
17   misapplication of the statute's 'significant possibility' standard." (Pet'r Suppl. Br.
18   at 6.) He also argued that the "failure of the government to review his I-589
19   petition ... before moving to remove him was a violation of his Due Process right,
20   as conferred by Congress." (Id.)
21   **3.    Analysis**
22   As discussed above in the Factual Background section, the Petition alleges
23   that when Petitioner entered the United States as a minor with his mother in 2012, a
24   credible fear interview was conducted with his mother. (See Pet. at 4 ¶ 11 [alleging
25   Petitioner "never had an opportunity to be interviewed for his request of asylum, at
26   the time of his arrival immigration officers interviewed his mother due to him being
27   a minor"].) She and Petitioner were found ineligible for asylum and an expedited
28   removal order was entered against them. (See id. at 4-5 ¶¶ 10, 14.) They were then

released from custody under an order of supervision. (Opp'n Ex. A / Dkt. 10-1 at 4 [Order of Supervision stating that Petitioner was ordered removed on September 27, 2012].) In January 2020, Petitioner was detained by immigration authorities. (Pet. at 2 ¶ 1.) In February 2020, he filed an I-589 Application for Asylum and for Withholding of Removal (Dkt. 6-1), but he was removed prior to this application being adjudicated.

Like Thuraissigiam, Petitioner claims that the procedures used to issue the 2012 expedited removal order violated due process. Section 1252(e) bars this Court from considering Petitioner's claims, because he does not ask this Court to review one of the narrow issues that the statute permits this Court to consider on habeas review, i.e., (a) whether Petitioner is an alien, (b) whether Petitioner was ordered removed, or (c) whether Petitioner has already been granted entry as a lawful permanent resident, refugee, or asylee. See 8 U.S.C. § 1252(e)(2); Thuraissigiam, 140 S. Ct. at 1966. Petitioner's initial argument that § 1252's limitations on habeas review violate the Suspension Clause (Opp'n at 4) is foreclosed by the Supreme Court's later decision in Thuraissigiam.

Petitioner now argues that Thuraissigiam does not bar his due process claim because removing him prior to adjudicating his I-589 Application for Asylum and for Withholding of Removal "was a violation of his Due Process right, as conferred by Congress." (Pet'r Suppl. Br. at 6.) He cites no federal statute or regulation providing that an alien cannot be removed while an I-589 application is pending. Considering his Petition as a whole, his argument seems to be that the I-589 application is his only meaningful opportunity to apply for asylum, because the procedures used to decide his and his mother's joint asylum application in 2012 violated due process.

In Thuraissigiam, the Supreme Court held that "an alien in [Thuraissigiam's] position has only those rights regarding admission that Congress has provided by statute." 140 S. Ct. at 1983. Petitioner appears to be arguing that the process

15

provided in 2012 did not comport with federal regulations; thus, he appears to be arguing, immigration authorities did not afford him all of the rights "conferred by Congress" and his claims are within the scope of due process as discussed in Thuraissigiam. For example, he argues that, because he did not speak English and no interpreter was provided, he "could not have been properly advised of his legal rights under 8 C.F.R. § 1240.10," such as the right to counsel and to appeal.[5] (Pet. at 7.) He also appears to be arguing that he could not have consented to being included in his mother's credible fear interview under 8 C.F.R. 208.30(b) for similar reasons.[6]

However, in holding that "an alien in [Thuraissigiam's] position has only those rights regarding admission that Congress has provided by statute," the Supreme Court defined those rights as follows: "the right to a 'determin[ation]' whether he had 'a significant possibility' of 'establish[ing] eligibility for asylum'...." 140 S. Ct. at 1983 (quoting 8 U.S.C. § 1225(b)(1)(B)(ii), (v)). Petitioner was afforded those rights in the form of his mother's credible fear interview. "Because the Due Process Clause provides nothing more," the Supreme Court held, "it does not require review of that determination or how it was made." Id. Here, like Thuraissigiam, Petitioner is seeking federal habeas review of how his asylum determination was made.

It is true that, apparently unlike Thuraissigiam, Petitioner has lived in the

---

[5] 8 C.F.R. § 1240.10(a) states that, in a removal proceeding, an immigration judge must advise the respondent of certain rights, such as the right to representation, to present evidence, and to appeal.

[6] 8 C.F.R. § 208.30(b) provides: "Treatment of dependents. A spouse or child of an alien may be included in that alien's credible fear evaluation and determination, if such spouse or child: (1) Arrived in the United States concurrently with the principal alien; and (2) Desires to be included in the principal alien's determination. However, any alien may have his or her credible fear evaluation and determination made separately, if he or she expresses such a desire."

16

United States over the last eight years. The majority opinion in Thuraissigiam appeared to suggest that "foreigners who have ... acquired ... domicil[e] or residence within the United States" would have greater due process rights. Thuraissigiam, 140 S. Ct. at 1982 (quoting Nishimura Ekiu, 142 U.S. at 660). Cf. id. at 1989 (Breyer and Ginsburg, JJ., concurring) (arguing the Court should not "address[] more broadly whether the Suspension Clause protects people challenging removal decisions" because this "may raise a host of difficult questions," such as, "What review might be the Suspension Clause assure, say, a person apprehended years after she crossed our borders clandestinely and started a life in this country?"). However, Petitioner only entered the United States after an expedited removal order had already been entered against him and his mother. The majority opinion in Thuraissigiam expressly addressed this situation, noting, "[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" 140 S. Ct. at 1982.

Accordingly, Petitioner's due process claims are barred under the logic of Thuraissigiam.[7]

---

[7] The Court notes that Respondents' Reply—filed before the Supreme Court issued its Thuraissigiam opinion—argued that even if Petitioner's claims were cognizable under the Ninth Circuit's Thuraissigiam opinion, they were effectively a facial challenge to immigration regulations that allow an accompanied minor's credible fear interview to be conducted in conjunction with his parent's interview. Respondents argued that such "a broad attack on the validity of expedited removals of minor aliens who are represented by their guardians" should have been filed in the U.S. District Court for the District of Columbia under 8 U.S.C. § 1252(e)(3)(A). (Reply at 5-6.) Petitioner's subsequent Sur-Reply and Supplemental Brief did not address this argument. Respondents' Supplemental Brief asserts, "Petitioner could have, but presumably did not, challenge the legality of the expedited removal process in the U.S. District Court for the District of Columbia under 8 U.S.C. § 1252(e)(3)." (Resp't Suppl. Br. at 5.) The Court declines to reach this issue, finding only that this Court lacks habeas jurisdiction over Petitioner's claims.

# VI.

# RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this R&R; (2) granting Respondents' motion to dismiss; and (3) dismissing the Petition for lack of subject matter jurisdiction.

DATED: December 10, 2020

_/s/ Karen E. Scott_
KAREN E. SCOTT
United States Magistrate Judge